2024 IL App (4th) 230506

NO. 4-23-0506

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DARREN RANSOM, | ) | No. 99CF596 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Zenoff and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        In September 1999, a jury found defendant, Darren Ransom, guilty of attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 1998)), home invasion (*id.* § 12-11(a)(1)), and armed robbery (*id.* § 18-2(a)). In November 1999, the trial court sentenced him to 15 years in prison for home invasion, 20 years for armed robbery (to run consecutively to the home invasion sentence), and 35 years for attempted murder (to run concurrently with the armed robbery and home invasion sentences).

¶ 2        In April 2001, this court affirmed defendant's convictions and sentences. *People v. Ransom*, 319 Ill. App. 3d 915, 923-24, 746 N.E.2d 1262, 1270 (2001).

¶ 3        In August 2022, defendant, through counsel, filed an amended postconviction petition alleging, relevant to this appeal, that (1) defendant's 35-year sentence for armed robbery violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the trial court, and not the jury,

found that the offense was brutal and heinous and (2) defendant's 20-year sentence for armed robbery should not be served at 85% because the court did not state during its oral ruling that the offense involved great bodily harm. Defendant also alleged that his appellate counsel rendered ineffective assistance by failing to assert the *Apprendi* claim on direct appeal.

¶ 4 In May 2023, the trial court granted the State's motion to dismiss defendant's postconviction petition.

¶ 5 Defendant appeals, arguing that the trial court erred by dismissing his amended postconviction petition at the second stage because the petition made a substantial showing that (1) defendant's appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the aggravating factor of brutal and heinous conduct that was used to extend defendant's attempted murder sentence was not submitted to the jury and proved beyond a reasonable doubt, in violation of *Apprendi*, and (2) defendant's trial and appellate counsel rendered ineffective assistance by failing to argue that defendant should serve his armed robbery sentence at 50% because the court did not make an oral finding at the sentencing hearing that the offense resulted in great bodily harm to the victim, rendering the court's written finding of great bodily harm on the judgment order unenforceable.

¶ 6 We disagree and affirm.

¶ 7 I. BACKGROUND

¶ 8 A. The Jury Trial

¶ 9 In September 1999, the trial court conducted defendant's jury trial, at which the following evidence was presented. On the night of May 15, 1999, at 11:30 p.m., the victim, Donna Hill, returned to her home, which she shared with (1) her mother, Denise Wilborn, (2) her brother, Carl Hill, and (3) her three sons. Her mother and infant son were the only ones at home when

Donna arrived. Sometime after midnight, Wilborn went next door to a friend's house.

¶ 10 Around 4 a.m., Donna's baby became fussy, and Donna started downstairs to prepare a bottle. Halfway down the stairs, she heard someone come in the front door. When she got to the living room, she saw defendant with one foot in the living room and one on the porch. Donna recognized defendant because he had been at her home several times in the previous weeks to see Wilborn, who braided his hair. A week earlier, Donna and defendant had argued at Donna's home, and she told defendant not to come there again.

¶ 11 Donna asked defendant to leave, and he left. She closed the door but did not lock it. After fixing the bottle, she returned to her bedroom, fed the baby, and put him in bed. Donna then got undressed and lay down on her bed to watch television and count her rent money. As she counted the money, she heard someone coming up the stairs.

¶ 12 Donna then saw defendant and another man, whom she did not recognize, standing at her bedroom door, and she asked them to leave. Defendant had a hammer in his hand. The day before the incident, Carl had used a hammer to install a door on Donna's bedroom and had left the hammer on the floor nearby. Defendant attacked Donna with the hammer, first striking her on the side of her face and then on her forehead. As she lost consciousness, the money fell out of her hands.

¶ 13 When Donna regained consciousness, she went to her bedroom window and yelled for help. She then crawled down the stairs and tried to leave the house. She made it to the kitchen, where she lost consciousness again.

¶ 14 Later that morning, Donald McClain, a former boyfriend of Donna and the father of her oldest child, entered the home and found Donna lying in the kitchen. McClain then went to his cousin's house, where he called 911.

¶ 15      When Springfield police detective James Young, an evidence technician, arrived on the scene, he found blood on the bed and walls of Donna's bedroom that continued in a path to the kitchen, where a considerable amount of blood had collected on the floor and walls. Young also found Donna's purse in the bedroom and its contents strewn on the floor. The hammer was never found.

¶ 16      During the night of May 15, 1999, and the early morning of May 16, James Jones and Monte Turner were at Mac's Lounge with defendant. Around 1 or 1:30 a.m., Jones could not find defendant. Jones and Turner left the lounge and returned to their home. When Jones entered the home, he placed his car keys on top of his entertainment shelf.

¶ 17      Around 8 a.m., Jones and Turner were awakened by defendant, who was knocking on the window and calling Jones's name, asking to be let in and offering $20 if someone would open the door. Turner eventually let defendant inside. Jones and Turner did not notice any blood on defendant. Defendant, who was carrying a black gym bag, asked Jones if he could drop him off at his father's house and offered him another $20. Jones denied defendant's request, and he and Turner went back to sleep. Turner described defendant as panicky, jumpy, and nervous that morning.

¶ 18      At 9:30 a.m., Turner's brother stopped by Jones and Turner's home to drop their child off and mentioned that Jones and Turner's car was gone. Jones and Turner then noticed that the keys were missing from the entertainment shelf. Approximately one week later, the car was found in St. Louis, Missouri. When it was returned, the car did not contain any blood or tools.

¶ 19      On May 23, 1999, a St. Louis police officer arrested defendant.

¶ 20      At the conclusion of the trial, the jury found defendant guilty of all counts.

¶ 21                    B. The Sentencing Hearing

¶ 22 In November 1999, the trial court conducted defendant's sentencing hearing. Donna testified that, because defendant struck her with a hammer, she suffered migraine headaches and sometimes lost sight in her right eye, and at times her leg "gave out" on her. She had to have reconstructive surgery to save her eye but lost her tear duct, and "everything on [that] side is blurry." She stated that the pain she suffered during recovery was pain she had never experienced before in her life. Donna had to receive physical therapy to learn how to walk again. Donna testified that, as an 18-year-old, she "should be out working," but she "ha[d] to depend on the government now for Social Security."

¶ 23 Defendant's father testified in mitigation, and defendant made a statement in allocution.

¶ 24 Afterward, the State argued for an aggregate sentence of 60 years in prison, stating the following regarding the sentencing range for each offense:

> "This is the definition of an exceptionally brutal and heinous crime indicative of wanton cruelty, and under the Corrections Code that is one basis for an extended term.
>
> It's hard to imagine a crime really more brutal than this to justify the imposition of an extended term *** so I think to begin with, start from the premise that this is an appropriate case for an extended term in determining the Defendant's range.
>
> To establish the high end of what [defendant] would face range-wise, under 730 ILCS 5/8-4(C)(2), that statute says for a crime where there's a single course of conduct without a substantial change in the criminal objective that the maximum sentence is the aggregate or sum of the extended terms for the two most serious

felonies, and in this case all three crimes are Class X's, so the aggregate of the extended terms for each one is 120 years. I believe that's the maximum he could possibly serve in this case.

On the minimum, I believe Section 730 ILCS 5/8-4(A) makes this a mandatory consecutive sentence. You have four requirements under that section. If there's a single course of conduct with no substantial change in the criminal objective, if one of the offenses is a Class X or Class 1 and the Defendant inflicts severe bodily injuries, it says the Court shall run sentences consecutively.

Well, all four of those predicates in this case—when you look at Home Invasion and Armed Robbery, it's a single course of conduct. There is really no substantial change in criminal objective.

One of the offenses—actually they were both Class X's, and there is no question the Defendant inflicted severe bodily injury.

I think under that section the Court is obligated by applying the statute and shall run consecutively with the Armed Robbery and Home Invasion, so that would show the minimum to be 12, so I think the range is 12 to 120.

For purposes of Home Invasion, I would also ask the Court to make a finding there was great bodily harm involved to implicate the truth in sentencing section as it applies to the Home Invasion charge, so I believe that's the range this defendant faces, somewhere between 12 and 120."

¶ 25    Regarding factors in aggravation, the State asserted that "the attack occurred right next to [Donna's] baby. When the police arrived they found an infant covered in blood from this man attacking her as she laid there with her own baby." The State also referred to two photographs

from the trial that showed Donna's injuries, arguing that they "show[ed] the severity and brutality of this crime." The State noted that defendant had four prior felony convictions, three of which were forcible felonies—namely, "a 1987 robbery, 1990 residential burglary and 1993 residential burglary, 1994 felony escape."

¶ 26 The State ultimately recommended a sentence of "30 years on the armed robbery consecutive to 30 years on the home invasion," as well as a concurrent 60-year sentence for attempted murder.

¶ 27 Defense counsel argued for a sentence of 20 years, remarking that "the Court is aware he is going to do 85 percent of that." Counsel also argued against the imposition of any extended term and stated, "Without an extended term, [defendant] would be looking at 12 to 60 years, as indicated by [the State] with the Attempt Murder running concurrent to the other two consecutive sentences ***." Counsel argued that the 20 years could be "broken up however the Court feels is appropriate, ten, ten and twenty concurrent, whatever the Court—we're talking about aggregate obviously. How it's broken down, Your Honor, is really moot at this point."

¶ 28 The trial court sentenced defendant to an aggregate of 35 years in prison, stating as follows:

> "I think the offense is exceptionally brutal and heinous, so with regard to the sentence, the Court is imposing the sentence and does find with regard to Home Invasion that it did result in great bodily harm to the victim. The Defendant is sentenced to 15 years in the Department of Corrections on the Home Invasion.
>
> On the Armed Robbery, the Defendant is sentenced to 20 years in the Department of Corrections. These two offenses run consecutive.
>
> On the Attempt Murder, the Defendant is sentenced to 35 years in the

Department of Corrections, to run concurrent with the Armed Robbery and with the Home Invasion."

¶ 29 That same month, the trial court entered a written sentencing order, which, in addition to setting forth the above sentences, stated that "[t]he Court further finds that the conduct leading to conviction for the offenses enumerated in counts II & III [(home invasion and armed robbery)] resulted in great bodily harm to the victim. (730 ILCS 5/3-6-3(a)(2)(iii))."

¶ 30                                    C. The Direct Appeal

¶ 31 Defendant appealed, arguing, relevant to this appeal, that "the mandatory consecutive sentencing provision of section 5-8-4(a) of the Unified Code [of Corrections] is unconstitutional under *Apprendi*[, 530 U.S. at 490], which was decided while defendant's case was pending on direct appeal." *Ransom*, 319 Ill. App. 3d at 923-24. Specifically, defendant argued in his brief that "the mandatory consecutive sentencing provision of 730 ILCS 5/5-8-4(a) violates the right to due process and a jury trial by subjecting defendants to increased punishment without notice of a jury finding upon proof beyond a reasonable doubt of the facts necessary for imposition of the increased term of imprisonment."

¶ 32 This court disagreed, explaining that *Apprendi*, which required that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," applied only to "increases in the sentencing range for a single, discrete conviction" and not the cumulative effect of a defendant's sentences. (Internal quotation marks omitted.) *Id.* at 924-25. Because section 5-8-4 had "nothing to do with the length of each discrete sentence" and pertained only to "the manner in which the sentence for each individual offense is to be served," we (1) concluded that *Apprendi* provided no support for defendant's claim and (2) affirmed defendant's convictions and sentences. (Emphasis omitted.) *Id.*

at 924-26.

¶ 33                     D. The Postconviction Petition

¶ 34          In February 2002, defendant *pro se* filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2002)). That same day, the trial court appointed counsel to represent defendant "for postconviction proceedings." Over the course of the next several years, at least six different attorneys were appointed or entered their appearances on behalf of defendant and then subsequently withdrew. Ultimately, in August 2022, defendant, through counsel, filed an amended postconviction petition, which is the operative petition in this appeal.

¶ 35          The amended petition alleged, relevant to this appeal, that (1) defendant's extended-term sentence for attempted murder violated *Apprendi* because the trial court, and not the jury, found that the offense was brutal and heinous, (2) defendant's armed robbery sentence should be served at 50% and not 85% because the court did not state at the sentencing hearing that the offense resulted in great bodily harm, and (3) appellate counsel was ineffective by "fail[ing] to argue [*Apprendi*'s] applicability to [defendant's] extended-term sentence for Attempted Murder."

¶ 36          In November 2022, the State filed a motion to dismiss the amended petition, arguing, in relevant part, that (1) defendant's *Apprendi* claims were barred by *res judicata*, (2) defendant's truth-in-sentencing claim (a) was not a constitutional claim and (b) was forfeited, and (3) defendant failed to make a substantial showing that his appellate counsel rendered ineffective assistance.

¶ 37          In May 2023, following a hearing, the trial court entered a written order granting the State's motion to dismiss the amended petition.

¶ 38          This appeal followed.

¶ 39                                    II. ANALYSIS

¶ 40        Defendant appeals, arguing that the trial court erred by dismissing his amended postconviction petition at the second stage because the petition made a substantial showing that (1) defendant's appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the aggravating factor of brutal and heinous conduct that was used to extend defendant's attempted murder sentence was not submitted to the jury and proved beyond a reasonable doubt, in violation of *Apprendi*, and (2) defendant's trial and appellate counsel rendered ineffective assistance by failing to argue that defendant should serve his armed robbery sentence at 50% because the court did not make an oral finding at the sentencing hearing that the offense resulted in great bodily harm to the victim, rendering the court's written finding of great bodily harm on the judgment order unenforceable.

¶ 41        We disagree and affirm.

¶ 42                                A. The Applicable Law

¶ 43                                    1. *The Act*

¶ 44        "The [Act] (725 ILCS 5/122-1 *et seq.* (West 2018)) is the statutory procedure by which a defendant can pursue a claim that his conviction or sentence was based on a substantial denial of his constitutional rights." *People v. Clark*, 2023 IL 127273, ¶ 38, 216 N.E.3d 855. "To be entitled to postconviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the challenged judgment." *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371.

¶ 45        "The purpose of a proceeding under the Act is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." (Internal quotation marks omitted.) *People v. House*, 2021 IL 125124, ¶ 15, 185

N.E.3d 1234. "Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited." *English*, 2013 IL 112890, ¶ 22. " '[A] defendant cannot obtain relief under the [Act] by rephrasing previously addressed issues in constitutional terms.' " *People v. Haines*, 2021 IL App (4th) 190612, ¶ 19, 188 N.E.3d 825 (quoting *People v. Franklin*, 167 Ill. 2d 1, 23, 656 N.E.2d 750, 760 (1995)); see *People v. Gaines*, 105 Ill. 2d 79, 90, 473 N.E.2d 868, 874 (1984) (stating that *res judicata* "[cannot] be defeated by rephrasing previously addressed issues in constitutional terms when raising them in the post-conviction petition").

¶ 46    "The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237. At the second stage of postconviction proceedings, the petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767.

¶ 47    We review *de novo* a trial court's dismissal of a postconviction petition at the second stage. *Sanders*, 2016 IL 118123, ¶ 31.

¶ 48                    2. *Ineffective Assistance of Counsel*

¶ 49    " 'To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant.' " *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366 (quoting *Domagala*, 2013 IL 113688, ¶ 36, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for

- 11 -

counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* " 'A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." ' " *Id.* (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601, quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy [either] of the prongs precludes a finding of ineffectiveness." (Internal quotation marks omitted.) *Id.*

¶ 50        Claims of ineffective assistance of appellate counsel are subject to the same *Strickland* analysis. *People v. Easley*, 192 Ill. 2d 307, 328-29, 736 N.E.2d 975, 991 (2000). "A defendant who contends that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that the decision prejudiced the defendant." *Id.* "[I]t is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Id.* at 329. "Accordingly, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." *Id.* (citing *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000), and *People v. West*, 187 Ill. 2d 418, 435, 719 N.E.2d 664, 675 (1999)).

¶ 51                                B. This Case

¶ 52                        1. *Defendant's* Apprendi *Claim*

¶ 53        Defendant first argues that appellate counsel rendered ineffective assistance by failing to assert a claim on direct appeal that his extended-term sentence for attempted murder violated *Apprendi* because the trial court, and not the jury, made the finding that the offense was accompanied by brutal and heinous behavior indicative of wanton cruelty.

¶ 54                        a. *Apprendi* and Its Application

¶ 55     In *Apprendi*, 530 U.S. at 490, the United States Supreme Court held that the due process clause of the fourteenth amendment (U.S. Const., amend. XIV, § 1) requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

¶ 56     The Illinois Supreme Court, applying *Apprendi*, subsequently held that "[a] defendant's due process rights are violated by a sentence which exceeds the maximum sentence authorized by the facts found by the jury, whether imposition of the invalid sentence is mandatory or discretionary with the judge." *People v. Swift*, 202 Ill. 2d 378, 383, 781 N.E.2d 292, 295 (2002). Specifically, in *Swift*, the Illinois Supreme Court vacated the defendant's extended-term sentence for first degree murder and remanded for a new sentencing hearing because "the factual finding that [the] defendant's crime was brutal and heinous was made by the circuit court [instead of the jury], and the State was not held to the appropriate burden of proof." *Id.* at 392.

¶ 57     The constitutional rule announced in *Apprendi* is generally not retroactive (*People v. De La Paz*, 204 Ill. 2d 426, 439, 791 N.E.2d 489, 497 (2003)); however, the rule *does* apply to cases that were on direct review when *Apprendi* was decided (*People v. Ford*, 198 Ill. 2d 68, 72-73, 761 N.E.2d 735, 738 (2001)).

¶ 58     *Apprendi* violations are subject to harmless-error analysis when preserved (*People v. Thurow*, 203 Ill. 2d 352, 368, 786 N.E.2d 1019, 1028 (2003)) and plain-error analysis when unpreserved, even if the failure to object to the sentencing violation occurred before *Apprendi* had been decided (*People v. Crespo*, 203 Ill. 2d 335, 347-48, 788 N.E.2d 1117, 1124 (2001) (citing *United States v. Cotton*, 535 U.S. 625 (2002) (applying plain-error test due to defendant's failure to object at trial even though *Apprendi* had not yet been decided))). "[I]n harmless-error analysis,

the *State* must prove that the jury verdict would have been the same absent the error to avoid reversal, whereas under plain-error analysis, a defendant's conviction and sentence will stand unless the *defendant* shows the error was prejudicial." (Emphases added.) *Id.*

¶ 59    b. Appellate Counsel Did Not Render Ineffective Assistance by Failing To Challenge the Trial Court's Brutal and Heinous Finding on Direct Appeal

¶ 60    As an initial matter, we disagree with the State that defendant's *Apprendi* claim is barred by *res judicata* because that claim was already decided on direct appeal. On direct appeal, appellate counsel challenged the consecutive sentencing statute under *Apprendi*, *not* the trial court's brutal and heinous finding. Nonetheless, defendant's brutal and heinous claim fails because he cannot demonstrate that he was prejudiced by counsel's failure to bring the claim on direct appeal.

¶ 61    Our conclusion is guided by the supreme court's analysis in *Crespo*. There, the defendant was convicted of first degree murder (committed in 1995) and sentenced to an extended-term sentence of 75 years based upon the trial court's posttrial finding that the offense was committed in a brutal and heinous manner indicative of wanton cruelty. *Id.* at 346. The supreme court issued its original opinion in February 2001 (shortly after *Apprendi* was decided in June 2000) but then issued a modified opinion upon denial of rehearing in March 2003 in which it addressed the defendant's argument that his extended-term sentence must be vacated because it violated *Apprendi*. *Id.*

¶ 62    The supreme court noted that it had recently decided in *Thurow*, 203 Ill. 2d 352, that *Apprendi* violations were not structural errors requiring reversal but instead were subject to harmless-error review. *Id.* at 347. However, because the defendant in *Crespo*, like defendant in the present case, had not preserved the *Apprendi* issue by objecting in the trial court, the proper inquiry

was not whether harmless error had occurred but whether plain error had occurred. *Id.* The court cited *Cotton*, 535 U.S. 625, for its application of the plain-error test due to the defendant's failure to object to an *Apprendi* violation at trial, even though *Apprendi* had not been decided until after the defendant was convicted. *Id.*

¶ 63    The *Crespo* court then wrote as follows:

"In *Cotton*, the [United States Supreme] Court noted that ' "before an appellate court can correct an error not raised at trial, there must be (1) 'error', (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " [Citation.] "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' [Citation.] The Court held that 'even assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.' [Citation.] The Court reached this conclusion based on the overwhelming evidence adduced.

In this case, we reach the same conclusion by the same reasoning." *Id.* at 348.

The *Crespo* court then pointed to the trial evidence showing that the defendant "attacked his victim with a kitchen knife with an eight-inch-long blade," stabbing her 24 times, causing the knife to bend at a 90-degree angle. *Id.* While the defendant stabbed the victim, he held her by her hair, ripping out a large clump with the scalp still attached. *Id.*

¶ 64    The *Crespo* court then held as follows:

"On the basis of this overwhelming evidence that the crime was brutal and heinous,

there is no basis for concluding that the *Apprendi* violation 'seriously affected the fairness, integrity or public reputation of judicial proceedings.' We have no doubt that a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty. Accordingly, [the] defendant has failed to show that the error was prejudicial." *Id.* at 348-49.

To punctuate its holding, the supreme court noted that "the fairness and integrity of the criminal justice system depends on meting out to those inflicting the greatest harm on society the most severe punishments." (Internal quotation marks omitted.) *Id.*

¶ 65        In the present case, we, too, reach the same conclusion for the same reasons. Had appellate counsel challenged defendant's extended-term sentence for attempted murder on direct appeal, the claim would have been subject to plain-error review because it was not preserved in the trial court. See *id.* at 347. However, as in *Crespo*, defendant cannot establish that the *Apprendi* violation that occurred—namely, the imposition of an extended-term sentence based on the trial court's posttrial finding that the offense was committed in a brutal and heinous manner— "seriously affected the fairness, integrity, or public reputation of judicial proceedings" because, also as in *Crespo*, the evidence was overwhelming that the offense was brutal and heinous, leaving us with no doubt that the jury would have reached the same conclusion. (Internal quotation marks omitted.) *Id.* at 348.

¶ 66        The Illinois Supreme Court defined "brutal," "heinous," and "wanton cruelty" in *People v. Kaczmarek*, 207 Ill. 2d 288, 303, 798 N.E.2d 713, 723 (2003), as follows:

" '[H]einous' behavior [is] behavior that is hatefully or shockingly evil; grossly bad; enormously and flagrantly criminal. [Citations.] 'Brutal' behavior is behavior

that is grossly ruthless, devoid of mercy or compassion; cruel and cold-blooded. [Citations.] Finally, 'wanton cruelty' requires proof that the defendant consciously sought to inflict pain and suffering on the victim of the offense. [Citations.]"

¶ 67        "In evaluating the brutality and heinousness of the crime, the entire spectrum of facts surrounding the given incident must be analyzed and evaluated." (Internal quotation marks omitted.) *People v. Hartzol*, 222 Ill. App. 3d 631, 651, 584 N.E.2d 291, 306 (1991). Factors courts have considered in determining whether conduct was exceptionally brutal and heinous include premeditation, the unprovoked nature of the attack, the number of wounds inflicted, "needless additional intrusions on the physical integrity of the victim during a robbery," and "the senseless nature of the act." (Internal quotation marks omitted.) *Id.* at 652. "A single act which causes death or injury may also be sufficient to demonstrate exceptionally brutal or heinous behavior, considering the entire conduct of the defendant." (Internal quotation marks omitted.) *Id.*

¶ 68        Here, the evidence at trial established that officers found Donna lying naked on her kitchen floor in a large pool of blood, moaning and making gurgling noises. She had a hole or puncture in her forehead, and her face was covered with blood, making it difficult to discern her precise injuries. A police officer who responded to the scene described the bedroom where the attack occurred. He stated that there was blood on the floor, walls, ceiling, and mattress. Donna's purse was on the floor, with the contents dumped out, also covered in blood.

¶ 69        A paramedic described seeing "very, very vast, very copious amounts of blood" and stated that he did not expect anybody to be alive. The same paramedic described Donna as having five "inch-and-a-half to two-inch *** chunks taken out from across her forehead, across her temple, and the most serious one *** along the bridge of her nose." He testified that she was basically breathing through the hole at the bridge of her nose because it reached down into her

"facial cavities." Regarding her other wounds, he testified that he "could see the open skull."

¶ 70          An emergency room physician testified that he observed three wounds on Donna's forehead that "reached down to the bone" and four or five lacerations on the left side of her head, and another laceration on the right side of her head. He further testified that three or four of the lacerations "had an underlying depressed skull fracture," which meant fragments of bone were driven into the cranial cavity. One of the lacerations on the left side of her head had brain matter coming through it. He also stated that the covering of Donna's brain—the dura—had been lacerated and her brain had also been bruised. An officer who went to the emergency room while Donna was being treated testified that "it was obvious that she was in a great deal of pain."

¶ 71          Donna testified that, when defendant was striking her about the face and head with a hammer, she believed she was going to die. She was also pregnant at the time.

¶ 72          The record in this case provides overwhelming evidence that the offense of attempted murder was committed in a brutal and heinous manner, indicative of wanton cruelty. Our conclusion is supported primarily by (1) the number and location of blows defendant struck to Donna's face and head, (2) the nature of the weapon being a blunt metal object, and (3) the severe and lasting damage his conduct caused to Donna.

¶ 73          Moreover, defendant attacked Donna in her own home in the presence of her infant child and left her to die. The witnesses' descriptions of Donna's injuries, which we have recounted above, are best described as horrifying. We have no difficulty concluding that defendant's conduct was shockingly evil, devoid of mercy or compassion, and consciously intended to cause Donna pain and suffering. Further, we have no doubt that the jury would have found the same had the question been presented to them during trial.

¶ 74          Defendant also argues that, had appellate counsel raised this *Apprendi* claim when

defendant's direct appeal was still pending, his direct appeal would likely have been decided before *Thurow* and *Crespo* were decided, meaning his claim would not have been subject to harmless-error or plain error review, but simply reversed.

¶ 75 Defendant's argument runs directly afoul of established precedent holding that, although the deficient performance prong of the *Strickland* test is measured from the time of counsel's performance, the prejudice prong is measured from the law in existence at the time of review. *People v. Bew*, 228 Ill. 2d 122, 132-33, 886 N.E.2d 1002, 1008 (2008) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 371, 372 (1993)). The *Bew* court noted that, because the prejudice prong of the *Strickland* test focuses on whether counsel's deficiencies rendered the result of the trial unreliable or the proceedings fundamentally unfair, "subsequent changes in the case law, even those that [are] adverse to a defendant, *** nonetheless inform the determination of prejudice." *Id.* The court reasoned that "to hold otherwise would 'grant the defendant a windfall to which the law does not entitle him.' " *Id.* at 133 (quoting *Lockhart*, 506 U.S. at 370).

¶ 76 As *Bew* directs, when assessing the prejudice prong of defendant's ineffective assistance claim, we apply the law in existence at the time of review. The Illinois Supreme Court in *Kaczmarek*, 207 Ill. 2d at 302, explained why this is the rule when it wrote the following:

"Clearly, after *Swift* there can be no doubt that the sentencing judge *** violated [the] principles of *Apprendi* when he sentenced defendant to an enhanced term of natural life based upon *his* finding that the murder was committed in a brutal and heinous manner indicative of wanton cruelty. However, it is equally clear, after *Thurow* and *Crespo*, that an *Apprendi* violation of this kind will not warrant resentencing where there is overwhelming evidence that the crime was committed in a brutal and heinous manner indicative of wanton cruelty." (Emphasis in

original.)

¶ 77        Applying the clear precedent of *Thurow*, *Crespo*, and *Kaczmarek*, although the trial court's posttrial brutal and heinous finding violated the principles of *Apprendi*, defendant cannot demonstrate that he was prejudiced because there is no doubt the jury would have reached the same finding based upon the facts of this case. As a result, (1) defendant cannot establish that he was prejudiced by appellate counsel's failure to bring the claim on direct appeal and (2) the court did not err by dismissing defendant's postconviction claim.

¶ 78                           2. *Defendant's Truth-In-Sentencing Claim*

¶ 79        Next, defendant argues that his trial and appellate counsel rendered ineffective assistance by failing to argue in the trial court and on direct appeal, respectively, that his sentence for armed robbery must be served at 50% instead of 85%. Specifically, defendant asserts that the court's written judgment order, which states that the armed robbery offense involved great bodily harm (requiring the sentence to be served at 85%), must be vacated because the court did not make an oral finding at the sentencing hearing that the offense involved great bodily harm. Defendant contends that, because a conflict exists between the court's oral pronouncement and its written judgment order, the oral pronouncement controls and the written order must be amended to reflect day-for-day sentence credit on that offense.

¶ 80        As an initial matter, we note that defendant did not raise this argument as an ineffective assistance of counsel claim in his amended petition but instead as a due process claim. Regardless of how defendant's argument is framed, his claim fails on its merits.

¶ 81                         a. The Truth-In-Sentencing Statute

¶ 82        Section 3-6-3(a)(2)(iii) of the Unified Code of Corrections (Code) provides as follows:

"[A] prisoner serving a sentence for home invasion[ or] armed robbery, *** when the court has made and entered a finding, pursuant to subsection (c-1) of Section 5-4-1 of this Code, that the conduct leading to conviction for the enumerated offense resulted in great bodily harm to a victim, shall receive no more than 4.5 days of good conduct credit for each month of his or her sentence of imprisonment." 730 ILCS 5/3-6-3(a)(2)(iii) (West 1998).

¶ 83    Section 5-4-1 of the Code, in turn, states:

"In imposing a sentence for the offense of *** home invasion[ or] armed robbery, *** the trial judge shall make a finding as to whether the conduct leading to conviction for the offense resulted in great bodily harm to a victim, and shall enter that finding and the basis for that finding in the record." *Id.* § 5-4-1(c-1).

¶ 84              b. Trial and Appellate Counsel Did Not Render Ineffective

Assistance by Failing To Raise a Truth-In-Sentencing Claim

¶ 85    Defendant argues that his trial counsel rendered ineffective assistance by failing to file a postsentencing motion alleging that the written judgment order, which stated that the armed robbery resulted in great bodily harm, conflicted with the trial court's oral pronouncement at sentencing, which did *not* include a finding that the armed robbery resulted in great bodily harm. Defendant contends that, in the event of a conflict, the oral pronouncement controls, which would result in defendant serving only 50% of the armed robbery sentence instead of 85% of the sentence. He also contends that appellate counsel was ineffective for failing to raise this claim on direct appeal.

¶ 86    We disagree. Defendant has not demonstrated that his trial or appellate counsel rendered ineffective assistance because his truth-in-sentencing claim fails on its merits. See *People*

*v. Rogers*, 2021 IL 126163, ¶ 32, 184 N.E.3d 222 ("Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless motion or objection."). Specifically, (1) the trial court's oral pronouncement and written order are not in conflict and (2) the record overwhelmingly establishes that the armed robbery resulted in great bodily harm to Donna.

¶ 87    First, regarding whether the trial court's oral pronouncement and written order conflict, this court wrote the following in *People v. Smith*, 242 Ill. App. 3d 399, 402, 609 N.E.2d 1004, 1006 (1993):

> "When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement of the court controls. [Citations.] However, often apparent inconsistencies may be resolved by examining the record as a whole to determine whether the written order expresses the intent of the judge's oral pronouncement, or conforms to the oral pronouncement's sense and meaning but is merely set forth with greater specificity. Where looking at the record as a whole, if the written order is *not* inconsistent with the intent, sense and meaning of the circuit court's oral pronouncement, the written order will be enforced.
>
> When the written order of judgment is arguably inconsistent with an oral pronouncement of the court in rendering a judgment, but is consistent with the court's intent in rendering the judgment, the written order will be enforced." (Emphasis in original.)

¶ 88    In *Smith*, this court discussed *People v. Hairston*, 207 Ill. App. 3d 674, 566 N.E.2d 343 (1990), as an example of a case in which the trial court's oral pronouncement and written order appeared to conflict but did not actually conflict. In *Hairston*, the court orally pronounced an 8-year sentence yet entered a 10-year sentence on the written judgment. The

*Hairston* court rejected the defendant's argument that the written judgment must be amended to reflect an 8-year sentence, observing that, although the court "had made reference to an [8]-year sentence in its oral pronouncement, it had begun by stating the defendant was to receive a 10-year sentence, and made consistent references to a 10-year sentence throughout the oral pronouncement." *Smith*, 242 Ill. App. 3d at 402-03. The *Hairston* court "affirmed the defendant's 10-year sentence, holding, '[i]n the absence of a *clear conflict* between the commitment order and the trial court's judgment, the commitment order need not be amended.' " (Emphasis in original.) *Id.* At 403 (quoting *Hairston*, 207 Ill. App. 3d at 681). Accordingly, *Hairston* provides an example of oral and written orders that, seemingly in conflict, are not in *clear conflict*, upon examination of the entire record and the court's intent.

¶ 89        In contrast to *Hairston*, a clear conflict between the trial court's oral pronouncement and written order existed in *In re Adoption of Jaxon R.*, 2023 IL App (5th) 230452-U, ¶ 59. There, the Appellate Court, Fifth District, wrote the following:

>           "In announcing the judgment at the fitness hearing, the court specifically found [the petitioner] failed to prove [the respondent] unfit for failure to maintain a reasonable degree of interest and concern, but proved [the respondent] failed to maintain a reasonable degree of responsibility. The court's written judgment, however, states that [the respondent] failed to maintain a reasonable degree of interest, concern, and responsibility. Under these circumstances, the oral judgment controls." *Id.*

¶ 90        Similarly, the appellate court in *People v. Roberson*, 401 Ill. App. 3d 758, 774, 927 N.E.2d 1277, 1291 (2010), found a clear conflict between the trial court's oral and written orders, writing as follows:

"Here, the trial court's written order of the conditions of probation states defendant's sentence term is '4 years,' from August 17, 2007, to August 17, 2011. The docket entry also states defendant was sentenced to '4 years['] probation.' However, at sentencing, the court stated, 'I'm going to sentence you to two years['] probation, six months in the Sangamon County [j]ail.' On the record before us, the written order is inconsistent with the court's oral pronouncement. As a result, the court's oral pronouncement is controlling."

¶ 91    *Jaxon R.* and *Roberson* provide examples of *clear conflicts*—that is, discrepancies in the oral and written orders that are impossible to reconcile because they are contradictory. *Hairston*, on the other hand, provides an example of an apparent discrepancy between the trial court's oral and written orders that could be reconciled in light of the entire record. We conclude that the present case is more similar to *Hairston*.

¶ 92    In the present case, at the sentencing hearing, the trial court did not say anything at all about whether the armed robbery resulted in great bodily harm to the victim, although it did state that the home invasion offense resulted in great bodily harm. In order for defendant to prevail, this court would have to infer from the trial court's omission that the court *intended* to find that the armed robbery did *not* result in great bodily harm. Such an inference would be the only way to establish a clear conflict, such as those in *Jaxon R.* and *Roberson*, between the court's oral pronouncement and written order. However, such an inference would be greatly at odds with (1) the evidence and (2) the whole of the court's sentence.

¶ 93    We earlier recited in detail (*supra* ¶¶ 64-67) the evidence in this case that overwhelmingly established that the offense of attempted murder was committed in a brutal and heinous manner, indicative of wanton cruelty. The same evidence supports the trial court's written

findings that both the offenses of home invasion and armed robbery resulted in great bodily harm to Donna.

¶ 94    When the trial court sentenced defendant, it fashioned a sentence totaling 35 years, comprising consecutive sentences of 20 years and 15 years for the armed robbery and home invasion, respectively, concurrent to a sentence of 35 years for the attempted murder. The court found that "the offense"—without referring to a specific charge—was exceptionally brutal and heinous. The court also remarked that defendant would be serving 85% of his sentence. Importantly, section 3-6-3(a)(2)(ii) of the Code requires that sentences for attempted murder be served at 85%. 730 ILCS 5/3-6-3(a)(2)(ii) (West 1998). Therefore, the whole of the court's sentence and its remarks at the sentencing hearing demonstrate the court's intent that defendant actually serve approximately 29 years in prison, or 85% of a 35-year sentence. The written judgment order does not conflict with that intent.

¶ 95    Defendant brings his claims as ineffective assistance of counsel claims, meaning that he must establish that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Veach*, 2017 IL 120649, ¶ 30.

¶ 96    We conclude that, had trial counsel brought the alleged discrepancy between the trial court's oral pronouncement and written order to the trial court's attention in a posttrial motion, there exists *no likelihood* that the court would have removed the finding of great bodily harm resulting from the armed robbery in the written order. That is because, as we have discussed, the evidence in this case overwhelmingly establishes that the offense resulted in great bodily harm to Donna, and the court intended for defendant to serve a lengthy sentence due to the brutality of his crime. The court would have simply conformed its oral pronouncement to its written finding,

which was the correct one based upon the record before us.

¶ 97    Because defendant cannot establish that he was prejudiced by his trial counsel's failure to challenge the written sentencing order in a posttrial motion, his claims of ineffective assistance of trial and appellate counsel fail on their merits. Accordingly, the trial court did not err by dismissing defendant's postconviction petition.

¶ 98    Before concluding, we note that defendant's initial postconviction petition in this case was filed in February 2002. Over the next 20 years, multiple attorneys represented defendant on that petition, which was amended in August 2022 to be the petition the State moved to dismiss. The trial court granted the State's motion, and that ruling was the subject of this appeal.

¶ 99    We mentioned this sequence of events because a 20-year delay in obtaining a ruling on a postconviction petition is unreasonable and borders on the unconscionable. Trial courts have a responsibility to ensure that postconviction petitions are timely heard and resolved.

¶ 100                      III. CONCLUSION

¶ 101    For the reasons stated, the judgment of the trial court is affirmed.

¶ 102    Affirmed.

*People v. Ransom*, 2024 IL App (4th) 230506

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 99-CF-596; the Hon. Ryan M. Cadagin, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Jeffrey Bruce Kirkham, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | John Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Courtney M. O'Connor, of State's Attorneys Appellate Prosecutors Office, of counsel), for the People. |