THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD SMITH, JR., Defendant-Appellant.

Second District    No. 2—03—0325

Opinion filed November 5, 2004.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and John R. Roe, of Chicago, for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a bench trial, defendant, Edward Smith, Jr., was found guilty of eight counts of aggravated criminal sexual assault (720 ILCS 5/12—14(a) (West 2000)), eight counts of criminal sexual assault (720 ILCS 5/12—13(a) (West 2000)), one count of aggravated domestic battery (720 ILCS 5/12—3.3 (West 2000)), two counts of aggravated battery (720 ILCS 5/12—4(a) (West 2000)), one count of unlawful restraint (720 ILCS 5/10—3 (West 2000)), and one count of armed violence (720 ILCS 5/33A—2(a) (West 2000)). The trial court sentenced defendant to consecutive prison terms of 25 years each on four of the counts of aggravated criminal sexual assault, and concurrent extended-term sentences of 12 years each for aggravated domestic battery and armed violence and 6 years each for unlawful restraint and aggravated battery. Judgments of conviction were entered on the remaining guilty verdicts, but the counts were merged. On appeal, defendant contends that the trial court committed reversible error by failing to conduct a fitness hearing after the trial court, *sua sponte*, raised a *bona fide* doubt of his fitness to stand trial. Defendant argues further that the trial court also erred by: (1) entering judgments of conviction for too many offenses and imposing sentences that are unauthorized under the Unified Code of Corrections (730 ILCS 5/1—1—1 *et seq.* (West 2000)); (2) improperly admonishing him pursuant to Supreme Court Rule 605(a) (134 Ill. 2d R. 605(a)); and (3) failing to credit him for time spent in custody before sentencing. We reverse and remand with directions because we find that the trial court committed reversible error by failing to conduct a fitness hearing after the court raised a *bona fide* doubt of defendant's fitness to stand trial. Because we

reverse and remand based on defendant's first contention, we need not address the remaining issues.

## BACKGROUND

On November 6, 2000, prior to defendant's trial, the assistant public defender filed a motion for a fitness evaluation, alleging that defendant had a history of mental health treatment, including current treatment at Good Samaritan Hospital, and that hallucinations could interfere with his ability to cooperate with counsel. Counsel stated that he had a *bona fide* doubt of defendant's fitness and requested that the court appoint Dr. Chiapetta to psychologically evaluate defendant. The trial judge ordered a fitness evaluation. Based on records from the hospital and jail and interviews with defendant, Dr. Chiapetta concluded that defendant was fit to stand trial. At a hearing on February 20, 2001, the attorneys stipulated that Dr. Chiapetta was a qualified clinical psychologist and would testify consistently with his report. Thereafter, the trial judge found defendant to be fit to stand trial.

Before, during, and after the February hearing, defendant expressed to the court his dissatisfaction with the assistant public defenders assigned to his case. The court had to continue the case several times for defendant to consider whether he wanted to represent himself. On July 23, 2001, defendant again insisted that he wished to fire the assistant public defenders and represent himself. Thereafter, the trial court, *sua sponte* in a written order, ordered the following:

> "[T]he court having raised a *bona fide* doubt as to the defendant's fitness to stand trial, the defendant shall be examined by Dr. Murray of the probation department. The defendant shall also be examined by Dr. Murray regarding the defendant's cognitive ability to waive his *Miranda* [*v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966),] Rights."

The public defender's office remained on the case in the interim.

After reviewing the various records, including Dr. Chiapetta's report and a psychiatric evaluation from March 2000, and interviewing defendant, Dr. Murray diagnosed that defendant had a mood disorder, not otherwise specified, that was in remission, and that he had an antisocial personality disorder. Dr. Murray concluded that defendant was fit to stand trial, as he was of average intelligence, understood the nature of court proceedings, and could assist in his defense.

On August 21, 2001, after Dr. Murray had prepared his report, the case came before the trial court. Defendant immediately reiterated his desire to fire the public defender. The judge noted that Dr. Murray

had found defendant fit to stand trial. After a brief colloquy with defendant, the judge indicated that defendant would be permitted to fire the public defender and to represent himself. Defendant requested standby counsel, and the judge responded that the public defender would be appointed in that capacity. The assistant public defender offered to check with the head public defender about assigning a different assistant. The assistant public defender further pointed out that the report from Dr. Murray needed to be addressed before a trial date was set. The court continued the case to August 27 for status, stating that the State would have to decide whether to stipulate to Dr. Murray's report.

However, when the case was called on August 27, the question of fitness was never addressed. A new assistant public defender appeared to serve as standby counsel, and the cause was continued for defendant to receive discovery. The issue of defendant's fitness was not addressed again until after the completion of the bench trial, which began at the end of May 2002.

More than three months after the pronouncement of guilt on June 3, 2002, defendant retained counsel to represent him for posttrial motions and sentencing. Counsel filed a motion for a new trial on January 6, 2003. He also filed a motion for a fitness examination, alleging that defendant had not been in a proper state of mind to represent himself at trial. In court, counsel informed the trial judge that he had a *bona fide* doubt of defendant's fitness. The court responded by entering an order raising a *bona fide* doubt and requiring a fitness evaluation by Dr. Corcoran.

Dr. Corcoran evaluated defendant and prepared a report wherein he concluded that defendant was fit to be sentenced. Dr. Corcoran found that defendant did not display any psychotic symptoms and offered a diagnosis of depressive disorder, not otherwise specified, and antisocial personality disorder. The parties eventually stipulated to the report, and the trial court found defendant fit to be sentenced. The cause thereafter proceeded to final judgment.

## ANALYSIS

Defendant now contends on appeal that his due process rights were violated because the trial court expressly raised, *sua sponte*, a *bona fide* doubt as to defendant's fitness to stand trial and the court proceeded to trial without first holding a fitness hearing. The State responds that, despite the fact that the trial court explicitly stated in its written order that it had raised a *bona fide* doubt as to defendant's fitness, the trial court merely intended to appoint an expert to examine defendant to determine *whether* a *bona fide* doubt of defendant's fit-

ness existed, because the record simply did not reflect that defendant was unfit.

■ The right to be fit for trial is fundamental. *People v. Eddmonds*, 143 Ill. 2d 501, 512-13 (1991). Accordingly, prosecuting a defendant where there is a *bona fide* doubt as to that defendant's fitness renders the proceedings fundamentally unfair, and we review this contention under the plain error rule. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996).

Due process bars prosecuting or sentencing a defendant who is not competent to stand trial. *Eddmonds*, 143 Ill. 2d at 512-13. Fitness to stand trial requires that a defendant understand the nature and purpose of the proceedings against him and be able to assist in his defense. 725 ILCS 5/104—10 (West 2000). Whether a *bona fide* doubt as to a defendant's fitness has arisen is generally a matter within the discretion of the trial court. *People v. Murphy*, 72 Ill. 2d 421, 431 (1978). However, once the trial court concludes that a *bona fide* doubt exists concerning the defendant's fitness, the defendant becomes constitutionally entitled to a fitness hearing. *People v. Contorno*, 322 Ill. App. 3d 177, 179 (2001); *People v. Teague*, 83 Ill. App. 3d 990, 993 (1980). In fact, although a defendant's fitness is presumed by statute (725 ILCS 5/104—10 (West 2000)), the trial court has a duty to order a fitness hearing, *sua sponte*, any time a *bona fide* doubt arises regarding a defendant's ability to understand the nature and purpose of the proceedings or assist in his defense. *Sandham*, 174 Ill. 2d at 382.

The State argues that, despite signing the order with the words "*bona fide* doubt," the court did not actually intend to raise a substantive *bona fide* doubt of defendant's fitness but rather wanted to ensure that defendant was fully capable of defending himself *pro se* and that he understood his *Miranda* rights. The State asserts that the judge's order was more akin to one in which the trial court orders a defendant to undergo a preliminary fitness examination to assist in the determination of *whether* a *bona fide* doubt of fitness exists under section 104—11(b) of the fitness provisions of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104—11(b) (West 2000)), rather than section 104—11(a), which requires that, *when* a *bona fide* doubt of defendant's fitness is raised, the court must conduct a fitness hearing before proceeding further (725 ILCS 5/104—11(a) (West 2000)).

The State points to several factors to support its assertion that the trial court ordered a fitness examination only to determine whether there was a *bona fide* doubt of defendant's fitness. First, the State points out that there was no evidence that defendant was unfit to stand trial. Second, although the court signed the order with the words "*bona fide* doubt," the court never articulated its reasons for finding a *bona*

*fide* doubt either verbally or in the order. Third, the court informed defendant that Dr. Murray's report indicated he was fit for trial and neither party on subsequent court dates asserted that a formal ruling needed to be made regarding the issue. The State further maintains that, "by proceeding to trial in the absence of a formal ruling, the court obviously felt that a formal ruling was not needed since the report was identical to that of Dr. Chiapetta." Fourth, the State argues that the court never intended its order to entitle defendant to a fitness hearing, because the court allowed defendant to dismiss the defense attorney and proceed *pro se* immediately after informing defendant that Dr. Murray found him fit for trial. Fifth, the State claims that the statements made by the trial court following defendant's motion for a new trial show that the court did not actually intend its order to raise a *bona fide* doubt of defendant's fitness to stand trial.

The State's claim relies solely on the presumption that the trial court never found a *bona fide* doubt of fitness to exist in spite of the trial court's explicit written finding to the contrary. We find no authority in the statutes or case law, and the State has not cited any, that required the trial court to articulate its reasons for finding that a *bona fide* doubt of defendant's fitness existed. Moreover, the State never questioned or sought to have the court explain its written finding. Whether a *bona fide* doubt as to a defendant's fitness has arisen is generally a matter within the discretion of the trial court. *Sandham*, 174 Ill. 2d at 382. Here, the judge observed defendant's demeanor as he repeatedly asserted his desire to fire the public defender and represent himself. Indeed, the judge articulated her concern regarding defendant's potential for "outbursts." The trial court was aware of Dr. Chiapetta's report, which disclosed defendant's history of psychological problems, including a psychiatric commitment in December 1999. The judge had the discretion to determine whether a *bona fide* doubt of fitness was raised and did make such a determination based on the facts before her. On the basis of her observations at the time of the order on July 23, 2001, the judge expressly found that a *bona fide* doubt of defendant's fitness existed. We find no abuse of discretion, and we will not presume otherwise.

Recently, our supreme court in *People v. Hanson*, 212 Ill. 2d 212 (2004), provided the following statutory distinction between sections 104—11(a) and (b):

> "Sections 104—11(a) and (b) may be applied in tandem or separately, depending on if and when the trial court determines a *bona fide* doubt of fitness is raised. If the trial court is not convinced *bona fide* doubt is raised, it has the discretion under section 104— 11(b) to grant the defendant's request for appointment of an expert

to aid in that determination. [Citation.] Even for a motion filed under section 104—11(a), the trial court could specify its need for a fitness examination by an expert to aid in its determination of whether a *bona fide* doubt is raised without a fitness hearing becoming mandatory. In either instance, after completion of the fitness examination, if the trial court determines there is *bona fide* doubt, then a fitness hearing would be mandatory under section 104—11(a). *** In sum, the primary distinction between sections 104—11(a) and 104—11(b) is that section 104—11(a) ensures that a defendant's due process rights are not violated when the trial court has already found *bona fide* doubt to have been raised, while section 104—11(b) aides the trial court in deciding whether there is a *bona fide* doubt of fitness." *Hanson*, 212 Ill. 2d at 217-18.

We find nothing in section 104—11(a) that prevents a court from raising the existence of a *bona fide* doubt of fitness before it orders an expert to conduct an evaluation. In this case, the trial court did not order a preliminary evaluation under section 104—11(b) because it already expressly found a *bona fide* doubt of defendant's fitness to stand trial pursuant to section 104—11(a).

In *Hanson*, the supreme court was asked to decide whether the grant of a defense motion for a psychological examination, without more, creates a sufficient inference that the trial court found a *bona fide* doubt of the defendant's fitness to stand trial so as to require a remand for a retrospective fitness hearing. The supreme court held that it does not because the defense motion specifically referred only to section 104—13(a) of the Code (725 ILCS 5/104—13(a) (West 2000)) and made no reference to section 104—11(a) or (b). *Hanson*, 212 Ill. 2d at 218. Section 104—13(a) only specifies who may be appointed to examine a defendant when the question of fitness involves mental health issues and can be used in conjunction with section 104—11(a) or (b). *Hanson*, 212 Ill. 2d at 219.

In this case, unlike in *Hanson*, the judge expressly found that a *bona fide* doubt existed, and therefore, it triggered the requirement for an evidentiary hearing pursuant to section 104—11(a). When a *bona fide* doubt as to a defendant's fitness to stand trial exists, the court must order a fitness hearing to resolve the question of fitness before the case proceeds any further. 725 ILCS 5/104—11(a) (West 2000); *People v. Johnson*, 206 Ill. 2d 348, 361 (2002). Once the judge found that a doubt existed, the court was constitutionally obligated to conduct a hearing. See *Contorno*, 322 Ill. App. 3d at 179. Accordingly, we reject the State's arguments.

Finally, the State argues that, if we decide that the court erred in failing to hold a hearing, the error was harmless because of the cura-

tive effect of the second fitness hearing held before sentencing. Contrary to the State's assertions, the trial court could not dispense with a hearing before trial simply by subsequently finding defendant to be fit for sentencing. We fail to understand how, in fairness, the court can determine retroactively whether a defendant had been fit before trial. That determination should have been made by the trial court following an evidentiary hearing in which defendant should have been given the opportunity to cross-examine the witnesses and present his case. Moreover, the fact that he may have been fit in January 2003 does not mean that he was fit before trial. We also reject the State's apparent assertion that this court is qualified to make that judgment simply because, as the State submits, defendant's actions throughout the proceedings demonstrate that he was fit for trial, in that he had the ability while representing himself to file and argue motions, including motions to quash his arrest and suppress evidence, dismiss the indictment, change venue, and merge offenses. That determination must be made by the trial court following a hearing. We conclude that the trial court committed reversible error by allowing the case to proceed to trial without first holding a fitness hearing after finding that a *bona fide* doubt existed as to defendant's fitness to stand trial.

■ Based on the foregoing, we reverse the judgment of the circuit court of Du Page County and remand the cause for a fitness hearing and, if appropriate, a new trial. Because there remains the possibility that (1) defendant may be found unfit to stand trial at all or (2) the evidence presented at a new trial may be different from the evidence presented in the present case, we need not pass on defendant's remaining contentions. We note that the trial court found defendant not guilty of count XXIX of aggravated battery, but erroneously marked the criminal sentence form with a finding of guilty and sentenced defendant to six years' imprisonment for it. The State concedes, and we confirm, that this sentence on remand should be vacated under double-jeopardy principles. See *People v. Henry*, 204 Ill. 2d 267, 283 (2003).

Reversed and remanded with directions.

BOWMAN and CALLUM, JJ., concur.