2025 IL App (4th) 241061-U

NO. 4-24-1061

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FILED
September 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Mason County |
| PAUL A. HARRIS, | ) | No. 23CF19 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Roger B. Thomson, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court (1) remanded the matter for a retrospective fitness hearing where the trial court found a *bona fide* doubt as to defendant's fitness but then erroneously accepted the parties' stipulation that defendant was fit for trial, (2) determined that the court erroneously entered judgment on two counts of murder when there was only one victim, and (3) ruled that the court improperly considered an inapplicable aggravating sentencing factor. Thus, on remand, if the court finds sufficient evidence to establish that defendant was fit at the time of his trial, it must affirm defendant's conviction on count I only and hold a new sentencing hearing on that count. If, however, the court cannot determine that defendant was fit at the time of his trial, it must hold a new trial on both counts.

¶ 2  Defendant, Paul A. Harris, was charged with two counts of first degree murder for killing his father, Paul D. Harris. Prior to trial, defense counsel filed a motion for a fitness hearing, raising a *bona fide* doubt as to defendant's fitness to stand trial. The trial court granted the motion and appointed an expert to evaluate defendant. The expert submitted a report, and the parties stipulated that defendant was fit to stand trial. The court accepted the stipulation, and the case

proceeded to a jury trial. The jury found defendant guilty of first degree murder. The court entered two convictions for first degree murder and sentenced defendant to concurrent 55-year prison terms. Defendant appeals, arguing that the court erred in (1) failing to hold a fitness hearing, (2) considering an inapplicable aggravating factor in sentencing, and (3) entering convictions and sentences on both counts of murder. We remand for a retrospective fitness hearing. If the court determines that the evidence regarding fitness is inconclusive or suggests that defendant was unfit at the time of his trial, defendant is entitled to a new trial on both counts. If, however, the court determines that defendant's fitness at the time of his trial can be assessed and confirmed, defendant's conviction shall stand on count I only and the court shall conduct a new sentencing hearing on that count because the court considered an improper factor at the original sentencing hearing.

¶ 3                                      I. BACKGROUND

¶ 4                                    A. Defendant's Charges

¶ 5          On March 5, 2023, defendant was charged with two counts of first degree murder (720 ILCS 5/9-1(a)(1)-(2) (West 2022)). Both counts alleged that defendant "struck Paul D. Harris multiple times with an axe," thereby causing his death. Count I alleged intentional murder, and count II alleged knowing murder.

¶ 6                                   B. Defendant's Fitness

¶ 7          On March 13, 2023, defense counsel filed a motion for a fitness examination and hearing. In her motion, counsel alleged, in part, as follows:

          "3. Counsel has spoken to the Defendant *** regarding the charges and has

                found the following:

                          A. The Defendant has advised he was sexual[ly] abused by the

victim.

B. The Defendant believes the alleged victim sexual[ly] abused his children.

C. Was sleeping and awoke with pressure near his anus and the victim was behind him.

4. The Defendant has experienced extreme trauma and counsel believes such had a direct effect on what may or may not have occurred.

5. The Defendant's current mental state is in question as to his ability to assist in his defense and his sanity at the time of the alleged offense.

6. Counsel therefore believes there is a *bona*[ ]*fide* doubt as to Defendant's fitness to stand trial and his sanity at the time of the alleged offense.

WHEREFORE, Counsel requests this honorable court to appoint an expert to examine the Defendant and that a hearing needs to be held to determine the Defendant's fitness and sanity at the time of the offense."

The State opposed the motion, and the trial court set a hearing for the motion.

¶ 8       On March 23, 2023, the trial court held a hearing and granted the motion, orally stating: "We will enter an order granting the motion, allowing for expert of defendant to examine the defendant regarding his fitness to stand trial as well as his sanity at the time of the alleged offense." The court's written order stated, in part, as follows:

"UPON MOTION, of ***, counsel for Defendant ***, a *bona*[ ]*fide* doubt having been raised as to the Defendant's fitness to stand trial and his sanity at the time of the alleged offense.

IT IS HEREBY ORDERED that a certified psychiatrist is appointed to

examine the Defendant to determine his fitness to stand trial and his sanity at the time of the alleged offense." The court postponed defendant's arraignment until a determination on his fitness was made.

¶ 9    Dr. Terry Killian performed a forensic psychiatric evaluation of defendant and prepared a report, which was submitted to the parties and the trial court. The matter was scheduled for a fitness hearing on May 11, 2023. On that date, the court acknowledged receiving Dr. Killian's report and stated: "Dr. Killian's opinion is that within a reasonable [degree] of psychiatric certainty [defendant] is currently fit to stand trial." Defense counsel expressed her belief that defendant "is fit" and stated that he "understands the charges that he has been accused of." She also believed defendant would be able to assist in defending the case and reported that he had already done so by reviewing discovery, making statements, and providing her with a written timeline. The court asked the prosecutor if he agreed that defendant "is fit for trial." The prosecutor responded:

> "Your Honor, the State is not prepared to stipulate to that at this juncture. I believe this matter needs to be heard at a formal hearing before the court. I believe today we should set the matter for a hearing on that."

The court scheduled a fitness hearing for May 18, 2023.

¶ 10    On May 18, 2023, the parties appeared in court. At that time, defense counsel again expressed her belief that defendant was fit to stand trial, stating that he "does understand the process of the court, understands the players' jobs, and is able to assist in his defense." The trial court then asked the prosecutor if he was "stipulating to the fitness of the defendant for trial." The prosecutor responded affirmatively. The court then stated: "So no need for further fitness hearing, both sides being in agreement by stipulation, [defendant] is fit for trial." On the same day, the court entered a written order, which provided, in part: "By stipulation of the parties, D[efendant] is found

- 4 -

fit to stand trial." Immediately thereafter, defendant was arraigned.

¶ 11                                    C. Defendant's Jury Trial

¶ 12         The case proceeded to a jury trial in March 2024. At trial, the State introduced evidence establishing that on March 2, 2023, police entered the home shared by defendant and Paul D. on Fleming Road in the Goofy Ridge area of Topeka, Illinois, and found "a lot of blood" and a large bloody axe. The officers followed the trail of blood through the house and out the back door and found Paul D.'s "lifeless" body on the ground in a wooded area behind the house.

¶ 13         On March 3, 2023, officers located defendant inside a home approximately 150 feet from the home he and Paul D. shared. Police interviewed defendant for several hours that day. The interview was recorded, and relevant portions were played for the jury. One of the interviewing officers testified that during the interview, defendant said that his father molested him. Defendant said that when he confronted his father about the molestation, his father's "pants fell down" and defendant thought his father was "going to take control of him" and "make him suck his dick." Defendant said he did not remember much after that but reported holding an axe when he confronted his father and said he swung the axe at his father after his pants fell down. During his interview with police, defendant said that Paul D. also molested defendant's brothers and daughter. Defendant provided the boots he was wearing to police.

¶ 14         The forensic pathologist who performed Paul D.'s autopsy testified that Paul D. "had extensive injuries" to many areas of his body, including his head, chest, arms, legs, and hands. The pathologist testified that Paul D. "died from exsanguination, which is the medical term for blood loss externally due to multiple chopping wounds." He testified that the axe found at defendant and Paul D.'s house was "consistent with causing those chopping injuries."

¶ 15         A forensic scientist employed by the Illinois State Police testified that the sole of

defendant's boot made an impression that was found at the crime scene. Another forensic scientist testified that DNA found on defendant's boot and the axe matched Paul D.'s DNA. Defendant's two brothers testified that Paul D. never molested them. Defendant presented no evidence.

¶ 16    The jury found defendant guilty of first degree murder. Defendant filed a motion for a new trial, arguing that (1) the State did not prove every element beyond a reasonable doubt, (2) he was denied a fair trial because a juror could not remain awake, (3) he was denied a fair trial because of a juror's outburst, and (4) cumulative errors denied him his right to a fair trial. On May 2, 2024, the trial court denied defendant's motion for a new trial and held defendant's sentencing hearing.

¶ 17                    D. Defendant's Sentence

¶ 18    Defendant's presentence investigation report (PSI), filed on April 24, 2024, revealed the following. Defendant was 43 years old. Defendant had charges against him pending in Mason County for criminal damage to property, criminal trespass to a building, and driving while his license was suspended/revoked. He had convictions in 2001 in Tazewell County for possession of cannabis, criminal damage to property, and driving under the influence of alcohol. Defendant reported having four children: a 23-year old daughter, a 14-year old daughter, an infant daughter, who passed away at birth in 2004, and an 18-year-old son, who committed suicide in 2022. Defendant's children lived with their mothers, but defendant reported that he helped raise them.

¶ 19    At the sentencing hearing, the State recommended that defendant receive the maximum sentence of 60 years in prison, arguing that "[t]he manner in which the defendant murdered his father was brutal, it was sadistic, and it was pure evil." The State asked the trial court to apply the following "statutory factors in aggravation:" (1) "the defendant's conduct caused

serious harm," (2) "the defendant does have a history of criminal activity," (3) "a maximum sentence is necessary in this matter to deter others from committing this crime—the same crime," (4) "the victim *** was at least 60 years of age," (5) "the defendant was out on bond when he committed the offense," (6) "psychological harm" to the victim's family, and (7) "the defendant was also in a position of trust with the victim in this matter."

¶ 20 Defense counsel first argued that the trial court could not consider that defendant's conduct caused serious harm because serious harm is inherent in the offense of murder. Counsel then argued the existence of several mitigating sentencing factors, including (1) that defendant, "at the time of the incident, had a psychiatric problem, was psychotic and delusional"; (2) defendant's "lack of criminal history," as demonstrated by a largely "crime-free life"; and (3) that defendant believed he was acting in self-defense. Defense counsel argued that the maximum sentence of 60 years in prison would be "a life sentence" for defendant, who "is not a young man." Defense counsel recommended the minimum sentence of 20 years in prison.

¶ 21 Defendant made a statement in allocution, stating that his father was his "best friend" and that he was "truly sorry for what happened." He further stated: "If I could go back, I— I would change what happened." Several of Paul D.'s family members provided statements to the trial court.

¶ 22 Thereafter, the trial court stated that it considered the PSI, defendant's statement in allocution, the arguments of counsel, and "all statutory and nonstatutory factors in aggravation and in mitigation" and sentenced defendant to 55 years in prison. The court stated, "I can imagine a more horrendous crime, but it's hard." The court entered a "Judgment Order and Sentence" and "Judgment—Sentence to Illinois Department of Corrections," which both reflect that the court sentenced defendant to concurrent prison terms of 55 years each for two counts of first degree

murder.

¶ 23                     E. Defendant's Motion to Reconsider His Sentence

¶ 24          Defendant filed a motion to reconsider his sentence, and he later filed a memorandum of law in support of his motion, arguing that (1) the trial court failed to adequately consider mitigating factors; (2) the court improperly considered aggravating factors, including "serious harm to the victim," "psychological harm" to the victim's family, and that "[d]efendant was in a 'position of trust' over the victim"; (3) the sentence imposed was excessive; and (4) the conviction entered on count II should be vacated under the one-act, one-crime rule. On August 1, 2024, the court held a hearing on the motion. At the hearing, the State argued, in part, that defendant "was in a position of trust with his father" and that the court's "sentence was appropriate." Defense counsel disputed that defendant was "in a position of superiority" over his father. In addressing the "position of trust" factor, the court stated as follows:

"As far as a position of trust, that's what I was just researching yet again, and that is in 14, under the aggravating factors, the defendant held a position of trust or supervision such as but not limited to family member and that is a unique situation in this case. The father, victim of the son's act, was a family member. Now, it doesn't require that dad or son were serving as guardian or Power of Attorney or caretaker or anything like that. The statute says the defendant held a position of trust or supervision such as but not limited to family member as defined in Section 11-0.1 of the Criminal Code. It goes on to include teacher, scout leader, baby-sitter, and other examples.

So I think, again given the unique circumstances of *** son murdering father wouldn't put the son in a position of trust or as caretaker but it specifically

- 8 -

says family member in that statute. So I think the court gave it appropriate weight in fashioning the sentence." The court stated, "[G]iven the nature of the offense and the other factors previously argued, both in aggravation and mitigation, I believe the 55-year sentence to be just given the circumstances." The court agreed with defense counsel that, pursuant to the one-act, one-crime rule, "the conviction should only be entered as to Count I as argued and that the sentence would be for the 55 years as previously imposed, and conviction of Count II and sentence thereon would be vacated." However, the court's written order stated: "Defendant's motion to reconsider sentence denied" and made no mention of vacating defendant's conviction and sentence on count II.

¶ 25       This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27                              A. Defendant's Fitness

¶ 28       Defendant first argues that the trial court erred in failing to hold a fitness hearing after a *bona fide* doubt as to his fitness was raised. He asks us to review this issue for plain error. The State, however, contends that the court never determined that a *bona fide* doubt about defendant's fitness existed, so the court was not required to hold a fitness hearing. The State alternatively asserts that the court held a hearing and determined that defendant was fit.

¶ 29                                   1. *Plain Error*

¶ 30       To preserve an error for review on appeal, the defendant must both object at trial and raise the issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). We may review an unpreserved error only if it amounts to plain error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The plain error doctrine allows a reviewing court to consider an unpreserved error when (1) "a clear or obvious error occurs and the evidence is so closely balanced that the error

alone threatened to tip the scales of justice against the defendant" or (2) "a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Piatkowski*, 225 Ill. 2d at 565. The defendant bears the burden of proving both prongs of plain error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The typical first step in any plain-error analysis is to determine whether a clear or obvious error occurred. *Piatkowski*, 225 Ill. 2d at 565.

¶ 31　　　"The right to be fit for trial *** is fundamental." *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). "[P]rosecuting a defendant where there is a *bona fide* doubt as to that defendant's fitness renders the proceeding fundamentally unfair." *Sandham*, 174 Ill. 2d at 382. Accordingly, we will review the trial court's alleged errors concerning fitness under the plain error rule. See *Sandham*, 174 Ill. 2d at 382; *People v. Shaw*, 2015 IL App (4th) 140106, ¶ 23.

¶ 32　　　　　　　　2. *Whether a Fitness Hearing Was Required*

¶ 33　　　"A defendant is presumed to be fit to stand trial." 725 ILCS 5/104-10 (West 2022). "A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or assist in his defense." 725 ILCS 5/104-10 (West 2022). "The due process clause of the fourteenth amendment bars [the] prosecution of a defendant unfit to stand trial." *People v. Holt*, 2014 IL 116989, ¶ 51; see U.S. Const., amend. XIV.

¶ 34　　　Ordinarily, a trial court's determination that a defendant is fit to stand trial will not be reversed absent an abuse of discretion. *Shaw*, 2015 IL App (4th) 140106, ¶ 25. " 'However, because this issue is one of constitutional dimension, the record must show an affirmative exercise of judicial discretion regarding the determination of fitness.' " *Shaw*, 2015 IL App (4th) 140106, ¶ 25 (quoting *People v. Contorno*, 322 Ill. App. 3d 177, 179 (2001)).

¶ 35　　　The first issue we must decide is whether the trial court was required to hold a

fitness hearing. Both parties agree that whether a fitness hearing was required is governed by section 104-11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11 (West 2022)). However, the parties disagree about whether the court ordered its examination of defendant pursuant to subsection (a) or (b) of section 104-11.

¶ 36　　　　In relevant part, section 104-11 states:

> "(a) The issue of the defendant's fitness for trial *** may be raised by the defense, the State or the Court at any appropriate time *** before, during, or after trial. When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.
>
> (b) Upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if a bona fide doubt as to his or her fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination. However, no order entered pursuant to this subsection shall prevent further proceedings in the case." 725 ILCS 5/104-11(b) (West 2022).

Our supreme court has explained the distinction between subsections (a) and (b) of section 104-11, stating as follows:

> "Sections 104-11(a) and (b) may be applied in tandem or separately, depending on if and when the trial court determines a *bona fide* doubt of fitness is raised. If the trial court is not convinced *bona fide* doubt is raised, it has the discretion under section 104-11(b) to grant the defendant's request for appointment of an expert to aid in that determination. 725 ILCS 5/104-11(b) (West 2000). Even for a motion filed under section 104-11(a), the trial court could specify its need for a fitness examination by an expert to aid in its determination of whether a *bona fide* doubt

is raised without a fitness hearing becoming mandatory. In either instance, after completion of the fitness examination, if the trial court determines there is *bona fide* doubt, then a fitness hearing would be mandatory under section 104-11(a) (725 ILCS 5/104-11(a) (West 2000)). [Citation.] Conversely, if after the examination the trial court finds no *bona fide* doubt, no further hearings on the issue of fitness would be necessary. Alternatively, section 104-11(b) may be bypassed entirely if the trial court has already determined without the aid of a section 104-11(b) examination that there is a *bona fide* doubt of the defendant's fitness. In that instance, the trial court would be obliged under section 104-11(a) to hold a fitness hearing before proceeding further. 725 ILCS 5/104-11(a) (West 2000). In sum, the primary distinction between sections 104-11(a) and 104-11(b) is that section 104-11(a) ensures that a defendant's due process rights are not violated when the trial court has already found *bona fide* doubt to have been raised, while section 104-11(b) aids the trial court in deciding whether there is a *bona fide* doubt of fitness." *People v. Hanson*, 212 Ill. 2d 212, 217-18 (2004).

¶ 37　　　　"The mere act of granting a defendant's motion for a fitness examination cannot, by itself, be construed as a definitive showing that the trial court found a *bona fide* doubt of the defendant's fitness." *Hanson*, 212 Ill. 2d at 222. Where the court's order appointing an examiner makes no reference to a *bona fide* doubt, the defendant is not entitled to a fitness hearing. See *People v. Scott*, 2020 IL App (2d) 180378, ¶¶ 19, 21; *People v. Schnoor*, 2019 IL App (4th) 170571, ¶¶ 48-49; *People v. Westfall*, 2018 IL App (4th) 150997, ¶¶ 56-57. However, where the court enters an order stating that a *bona fide* doubt as to a defendant's fitness has been raised, the court must conduct a fitness hearing. *People v. Smith*, 353 Ill. App. 3d 236, 240 (2004) (citing 725

ILCS 5/104-11(a) (West 2000)); *People v. Cook*, 2014 IL App (2d) 130545, ¶ 14; *Contorno*, 322 Ill. App. 3d at 179.

¶ 38        Here, the State contends that this case is most closely analogous to our decisions in *Schnoor* and *Westfall*, where the trial courts ordered examinations pursuant to section 104-11(b) to aid in the determination of whether a *bona fide* doubt as to fitness was raised. Defendant, however, argues that the trial court's statements and actions establish that it ordered an examination pursuant to section 104-11(a) after finding a *bona fide* doubt as to fitness was raised. We agree with defendant.

¶ 39        Defense counsel did not specify whether her motion for a fitness examination and hearing was brought pursuant to section 104-11(a) or 104-11(b); however, the substance of her motion established that it was a section 104-11(a) motion because counsel (1) requested not only an examination but also a hearing and (2) stated that there was "a *bona*[ ]*fide* doubt as to Defendant's fitness to stand trial," paraphrasing the language contained in subsection (a). See 725 ILCS 5/104-11(a) (West 2022). The record also showed that the trial court ordered a fitness examination pursuant to subsection (a) because the court (1) granted defendant's motion generally and without limitation, (2) expressly stated that "a *bona*[ ]*fide* doubt ha[d] been raised as to the Defendant's fitness to stand trial," (3) appointed a certified psychiatrist to examine defendant "to determine his fitness to stand trial," and (4) postponed defendant's arraignment until after defendant's fitness was determined, which is consistent with section 104-11 (a)'s requirement that "the court shall order a determination of the [fitness] issue before proceeding further." 725 ILCS 5/104-11(a) (West 2022).

¶ 40        It would make no sense for a court to "order a preliminary evaluation under section 104-11(b)" where "it already expressly found a *bona fide* doubt of defendant's fitness to stand trial

pursuant to section 14-11(a)." *Smith*, 353 Ill. App. 3d at 242. The court's express statement that a *bona fide* doubt was raised makes this case distinguishable from the cases cited and relied on by the State. See *Schnoor*, 2019 IL App (4th) 170571, ¶ 48 (noting that the court's written order made no reference to a "*bona fide* doubt"); *Westfall*, 2018 IL App (4th) 150997, ¶¶ 56-57 (discussing the absence of a trial court finding of a "*bona fide* doubt regarding defendant's fitness"). Furthermore, here, the court stated in its order that the purpose of the examination was to determine defendant's "fitness to stand trial"—which is the purpose of a section 104-11(a) examination (see 725 ILCS 5/104-11(a) (West 2022) (addressing "[t]he issue of the defendant's fitness for trial"))— not "to determine prior to trial if a *bona fide* doubt as to his *** fitness to stand trial may be raised" (725 ILCS 5/104-11(b) (West 2022)).

¶ 41　　　　Additionally, the trial court's actions and statements after entering its order demonstrate that the order was made pursuant to subsection (a) of section 104-11, not subsection (b). First, after reviewing the expert's report, the court did not state that it determined no *bona fide* doubt as to defendant's fitness existed. Instead, the court scheduled and then rescheduled the fitness hearing, which is consistent with the procedure required by section 104-11(a). See *Hanson*, 212 Ill. 2d at 217-18. Furthermore, the court held no other proceedings while the issue of defendant's fitness was pending, a requirement of section 104-11(a) but not section 104-11(b). See 725 ILCS 5/104-11(a) (West 2022) ("When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further"); 725 ILCS 5/104-11(b) (West 2022) ("[N]o order entered pursuant to this subsection shall prevent further proceedings in the case."); *Scott*, 2020 IL App (2d) 180378, ¶ 16 ("Under section 104-11(a), once a *bona fide* doubt is raised, a hearing is necessary before the court can address other pretrial matters." (Emphasis omitted.)). Finally, the court asked the State if it was willing to stipulate that

- 14 -

defendant was "fit for trial," the issue to be determined where section 104-11(a) governs. See 725 ILCS 5/104-11(a) (West 2022). Based on this record, the court ordered the fitness examination of defendant pursuant to section 104-11(a).

¶ 42    3. *Whether the Court Conducted a Fitness Hearing*

¶ 43    Having found that the trial court's order was made under section 104-11(a), we now must determine if the court held a proper fitness hearing. The State contends the court did, while defendant contends the court did not.

¶ 44    When a *bona fide* doubt of the defendant's fitness has been raised, "the court must order a behavioral clinical examination by a licensed physician, clinical psychologist, or psychiatrist." *People v. Smith*, 2017 IL App (1st) 143728, ¶ 84 (citing 725 ILCS 5/104-11(a)-(b), 104-13(a) (West 2014)). After the court receives the examiner's report, it "shall conduct a hearing to determine the issue of the defendant's fitness." 725 ILCS 5/104-16(a) (West 2022). "On the basis of the evidence before it, the court *** shall determine whether the defendant is fit to stand trial." 725 ILCS 5/104-16(d) (West 2022).

¶ 45    Once a *bona fide* doubt about a defendant's fitness has been raised, "for due process requirements to be satisfied, 'the record must show an affirmative exercise of judicial discretion regarding the fitness determination.' " *Scott*, 2020 IL App (2d) 180378, ¶ 15 (quoting *Cook*, 2014 IL App (2d) 130545, ¶ 13); see *People v. Gillon*, 2016 IL App (4th) 140801, ¶ 21 ("[B]ecause the issue of fitness is constitutional in dimension, the record must affirmatively show that the court's fitness determination was the product of judicial discretion and judgment."). When a *bona fide* doubt has been raised, the defendant's due process rights will not be satisfied if the trial court fails to independently consider the defendant's fitness and, instead, relies exclusively on the parties' stipulation that the defendant is fit. *Scott*, 2020 IL App (2d) 180378, ¶ 15; see *Gillon*, 2016 IL App

(4th) 140801, ¶¶ 21-26, 31. The ultimate determination regarding the defendant's fitness must be made by the trial court, not the parties or the experts. See *People v. Cleer*, 328 Ill. App. 3d 428, 431 (2002). "When assessing a defendant's fitness, the court 'should be active, not passive.' " *Shaw*, 2015 IL App (4th) 140106, ¶ 25 (quoting *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 29).

¶ 46        Here, after receiving the expert's report, the trial court was required to (1) hold a fitness hearing and (2) determine if defendant was fit to stand trial. See 725 ILCS 5/104-16(a), (d) (West 2022); *Smith*, 2017 IL App (1st) 143728, ¶ 84. However, the court did neither. Although the court scheduled a fitness hearing to take place on May 11, 2023, and then on May 18, 2023, no hearing was ever held. Instead, on May 18, 2023, the court accepted the parties' stipulation as to defendant's fitness, as reflected by both the court's oral statement that there was "no need for further fitness hearing, both sides being in agreement by stipulation, [defendant] is fit for trial" and its written order, which provided: "By stipulation of the parties, D[efendant] is found fit to stand trial."

¶ 47        The State contends that the trial court made a fitness determination because it reviewed the expert's report and noted that the expert found defendant fit to stand trial. However, the record refutes the State's contention that it was the court, not the parties, who made the fitness determination. The court's oral and written statements on May 18, 2023, establish that the court made no active, independent determination about defendant's fitness but passively accepted the parties' stipulation that defendant was fit.

¶ 48        The trial court's exclusive reliance on the parties' stipulation that defendant was fit violated defendant's due process rights and constituted clear or obvious error. See *People v. Esang*, 396 Ill. App. 3d 833, 840 (2009) ("A trial court's failure to independently analyze and weigh expert

testimony in making a fitness finding is a constitutional error."); *Smith*, 353 Ill. App. 3d at 243 ("[T]he trial court committed reversible error by allowing the case to proceed to trial without first holding a fitness hearing after finding that a *bona fide* doubt existed as to defendant's fitness to stand trial."). Defendant, therefore, has established the first requirement of plain error review. See *Piatkowski*, 225 Ill. 2d at 565. Defendant has also established the second prong of plain error because the court's failure to hold a fitness hearing when there was a *bona fide* doubt as to defendant's fitness rendered the proceeding fundamentally unfair. *Sandham*, 174 Ill. 2d at 382; see *People v. Manskey*, 2016 IL App (4th) 140440, ¶ 89 ("[T]rying an unfit defendant, or someone whose fitness is legitimately in doubt, is fundamentally unfair."); *Gillon*, 2016 IL App (4th) 140801, ¶¶ 19, 31 (finding plain error where the court relied solely on the parties' stipulations to determine that the defendant had been restored to fitness); *Contorno*, 322 Ill. App. 3d at 179-80 (finding plain error and remanding for a new fitness hearing where the original hearing was "deficient" because the court exercised no "discretion in finding [the] defendant fit").

¶ 49                                            4. *Remedy*

¶ 50            Having found that defendant established plain error, we must now determine the proper remedy.

¶ 51            If a trial court fails to hold a fitness hearing after a *bona fide* doubt as to the defendant's fitness has been raised, the proper remedy is to remand the cause and direct the trial court to hold a retrospective fitness hearing. See *Gipson*, 2015 IL App (1st) 122451, ¶ 38; *Cook*, 2014 IL App (2d) 130545, ¶ 22. "A retrospective fitness hearing requires the same active role of the court in assessing the defendant's fitness as an original fitness *** hearing." *People v. Payne*, 2018 IL App (3d) 160105, ¶ 15. The court must review the evidence and determine whether, in light of that evidence, the defendant was fit at the time of his trial. See *Cook*, 2014 IL App (2d)

130545, ¶ 22.

¶ 52 While the trial court may consider stipulated findings, the court may "not rely solely on stipulations, or a stipulation as to ultimate fitness," and must make "an independent evaluation and determination of fitness." *Payne*, 2018 IL App (3d) 160105, ¶ 15. Thus, "it is incumbent upon the court to make a record reflecting that it did more than merely base its fitness finding on the stipulation to the expert's ultimate conclusion." *Cook*, 2014 IL App (2d) 130545, ¶ 20. "The court must state on the record the factual basis for its finding, which must be more than a mere acceptance of a stipulation that the defendant is fit or that an expert found the defendant fit." *Cook*, 2014 IL App (2d) 130545, ¶ 20.

¶ 53 At the retrospective fitness hearing, the State bears the burden of proving by a preponderance of the evidence that the defendant was fit at the time of trial. 725 ILCS 5/104-11(c) (West 2024); *People v. McDurmon*, 2022 IL App (1st) 181259-U, ¶¶ 65-67. "However, the court may call its own witnesses and conduct its own inquiry." 725 ILCS 5/104-11(c) (West 2024). At the hearing, the court shall accept any and all evidence relevant to the defendant's fitness, including but not limited to the following:

"(1) The defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment or sentence, and the functions of the participants in the trial process;

(2) The defendant's ability to observe, recollect and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel;

(3) The defendant's social behavior and abilities; orientation as to time and place; recognition of persons, places and things; and performance of motor

- 18 -

processes." 725 ILCS 5/104-16(b)(1)-(3) (West 2024).

¶ 54    Based on the evidence before it, the trial court "shall determine whether the defendant [was] fit to stand trial." 725 ILCS 5/104-16(d) (West 2024). If the court determines that the evidence is inconclusive or suggests that the defendant was unfit at the time of trial, the defendant's conviction should be reversed and the defendant should receive a new trial. *Gipson*, 2015 IL App (1st) 122451, ¶ 38; *People v. Hill*, 297 Ill. App. 3d 500, 517 (1998). If, however, the court determines that the defendant's fitness at his prior trial can be assessed and confirmed, his conviction will stand. *Gipson*, 2015 IL App (1st) 122451, ¶ 38; *Hill*, 297 Ill. App. 3d at 517.

¶ 55    Accordingly, we remand for a retrospective fitness hearing. At the hearing, the trial court should (1) review Dr. Killian's report, (2) examine the relevant reports of proceedings, (3) hear from witnesses who can testify about defendant's fitness at the time of trial, and (4) make an independent determination as to defendant's fitness at the time of trial. See *People v. Zoph*, 2023 IL App (2d) 220123-U, ¶ 70 (citing *Cook*, 2014 IL App (2d) 130545, ¶ 22). If the court determines that the evidence regarding fitness is inconclusive or suggests that defendant was unfit, defendant's conviction should be reversed and defendant should be granted a new trial on both counts. See *Gipson*, 2015 IL App (1st) 122451, ¶ 38; *Hill*, 297 Ill. App. 3d at 517. If, however, the court determines that defendant's fitness at the time of his trial can be assessed and confirmed, for the reasons we will explain in the next two sections, his conviction shall be affirmed only on count I, and a new sentencing hearing must be held.

¶ 56                                    B. Defendant's Sentence

¶ 57    Defendant also argues that he is entitled to a new sentencing hearing because the trial court improperly considered an aggravating sentencing factor that did not apply. The State responds that the record does not conclusively establish that the court considered an improper

aggravating factor at sentencing.

¶ 58    In general, to preserve an error for review on appeal, the defendant must both object at trial and raise the issue in a posttrial motion. *Enoch*, 122 Ill. 2d at 186. "Unlike other sentencing issues, however, a defendant is not required to object to the trial court's reliance on an improper factor at sentencing, as this would entail interrupting the court during its pronouncement of the sentence." *People v. Chipman*, 2025 IL App (4th) 241038-U, ¶ 17 (citing *People v. Martin*, 119 Ill. 2d 453, 460 (1988)). Thus, as long as a defendant raises a trial court's reliance on an improper sentencing factor in a posttrial motion, the issue is properly preserved for appellate review. See *Chipman*, 2025 IL App (4th) 241038-U, ¶¶ 17-18.

¶ 59    Here, in his motion to reconsider his sentence, defendant asserted that the trial court improperly considered several aggravating factors, including the "position of trust" factor, in sentencing him. Additionally, defense counsel raised this issue at the hearing on the motion to reconsider sentence. Therefore, defendant preserved this issue.

¶ 60    In reviewing a sentencing decision, we afford "great deference" to the trial court, which "has broad discretionary powers in imposing a sentence." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Generally, "a sentence within the statutory limits will not be disturbed absent an abuse of discretion." *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). However, we review whether the trial court relied on an improper sentencing factor *de novo*. *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 15.

¶ 61    There is a "strong presumption" that the "court based its sentencing determination on proper legal reasoning." *People v. Solis*, 2019 IL App (4th) 170084, ¶ 26. "The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). A sentence based on an improper factor

"will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008). If we are unable to determine the weight the trial court gave to an improper factor, we must remand for resentencing. *People v. McCain*, 248 Ill. App. 3d 844, 853 (1993).

¶ 62 Section 5-5-3.2(a) of the Unified Code of Corrections enumerates the statutory factors a trial court may consider "as reasons to impose a more severe sentence." 730 ILCS 5/5-5-3.2(a) (West 2024). One such aggravating factor is contained in subsection (a)(14), which provides:

> "the defendant held a position of trust or supervision such as, but not limited to, family member as defined in Section 11-0.1 of the Criminal Code of 2012, teacher, scout leader, baby sitter, or day care worker, in relation to a victim under 18 years of age, and the defendant committed an offense in violation of Section 11-1.20, 11-1.30, 11-1.40, 11-1.50, 11-1.60, 11-6, 11-11, 11-14.4 ***, 11-15.1, 11-19.1, 11-19.2, 11-20.1, 11-20.1B, 11-20.3, 12-13, 12-14, 12-14.1, 12-15 or 12-16 of the Criminal Code of 1961 or the Criminal Code of 2012 against that victim." 730 ILCS 5/5-5-3.2(a)(14) (West 2024).

All the offenses listed in subsection (a)(14) are "sexual offenses." *People v. Johnson*, 2024 IL 130191, ¶ 45. This aggravating factor applies only if the defendant is convicted of a sexual offense and the victim is under 18 years of age. 730 ILCS 5/5-5-3.2(a)(14) (West 2024); *Johnson*, 2024 IL 130191, ¶¶ 45, 48.

¶ 63 In this case, defendant was convicted of first degree murder, not a sexual offense, against his father, who was well over the age of 18. Thus, the trial court could not consider

defendant's "position of trust" as an aggravating factor. See 730 ILCS 5/5-3.2(a)(14) (West 2024); *Johnson*, 2024 IL 130191, ¶ 48. Nevertheless, the State improperly argued at the sentencing hearing that the court could consider defendant's "position of trust" in relation to Paul D. as an aggravating factor. At the conclusion of the sentencing hearing, the court did not specify what sentencing factors it considered, stating only that it considered "all statutory and nonstatutory factors in aggravation and in mitigation."

¶ 64    In his motion to reconsider sentence, defendant argued that the trial court improperly considered as an aggravating sentencing factor that he was in a "position of trust" with Paul D. At the hearing on the motion, the State again asserted that the court could consider that aggravating factor because defendant "was in a position of trust with his father." In discussing the "position of trust" factor at the hearing on the motion, the court stated: "I think the court gave it appropriate weight in fashioning the sentence."

¶ 65    The State contends that the trial court's full discussion of the "position of trust" shows that the court did not consider that factor in sentencing or, "at worst," was "ambiguous" as to whether the court considered that factor. We disagree, as the court expressly stated that it "gave" that factor "appropriate weight in fashioning the sentence." This statement shows that the court considered defendant's "position of trust" as an aggravating factor in imposing defendant's sentence. In doing so, the court erred. See *Johnson*, 2024 IL 130191, ¶ 48 (finding that "the circuit court committed a clear or obvious error by considering [the] defendant's position of trust in relation to the victim as a statutory factor in aggravation in imposing the sentence" where the defendant was not convicted of any sexual offenses and the victim was not under 18 years of age).

¶ 66    Based on the trial court's statement, we know that the court placed some weight on this inapplicable aggravating sentencing factor. However, we are unable to determine how much

- 22 -

weight the court gave to this factor. Thus, depending on the results of the retrospective fitness hearing, defendant may need to be resentenced. See *McCain*, 248 Ill. App. 3d at 853. In resentencing defendant, the court may not consider as an aggravating factor that defendant stood in a position of trust in relation to Paul D.

¶ 67                                C. One-Act, One-Crime Rule

¶ 68        Finally, defendant claims his convictions and sentences on both counts of first degree murder violate the one-act, one-crime rule. The State agrees.

¶ 69        The one-act, one-crime rule provides "that a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v Coats*, 2018 IL 121926, ¶ 11. Whether the trial court violated the one-act, one-crime rule is a question of law we review *de novo*. *Coats*, 2018 IL 121926, ¶ 12.

¶ 70        When one person has been murdered, there can be only one conviction of murder. *People v. Kuntu*, 196 Ill. 2d 105, 130 (2001). "When multiple murder convictions have been entered for the same act, only the conviction for the most culpable charge of murder will be upheld, and the convictions on the less culpable charges of murder must be vacated." *Kuntu*, 196 Ill. 2d at 130. Intentional murder involves a more culpable mental state than knowing murder. See *People v. Pitsonbarger*, 142 Ill. 2d 353, 378 (1990).

¶ 71        Here, the "Judgment—Sentence to Illinois Department of Corrections" entered by the trial court shows two convictions for first degree murder: intentional murder (count I) and knowing murder (count II). However, Paul D. was the only murder victim. Therefore, defendant could only be convicted of and sentenced on one count of murder. See *Kuntu*, 196 Ill. 2d at 130.

¶ 72        The trial court acknowledged this error at the hearing on the motion to reconsider, stating that "the conviction should only be entered as to Count I *** and conviction of Count II

- 23 -

and sentence thereon would be vacated." However, the court's written order following the hearing stated that defendant's motion was "denied," and the "Judgment—Sentence to Illinois Department of Corrections" was never corrected to reflect only one conviction and sentence for murder. " 'When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement of the court controls.' " *People v. Ransom*, 2024 IL App (4th) 230506, ¶ 87 (quoting *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993)). Accordingly, if the court determines on remand that defendant was fit at the time of his trial, it shall issue a corrected order to the Illinois Department of Corrections reflecting that defendant stands convicted of and sentenced only on count I.

¶ 73                                    III. CONCLUSION

¶ 74            In conclusion, we remand for a retrospective fitness hearing. If the trial court finds that defendant was unfit at the time of his trial or that the evidence is inconclusive as to his fitness, defendant is entitled to a new trial on both counts. If, however, the court is able to determine that defendant was fit at his trial, the court will affirm defendant's conviction only on count I and conduct a new sentencing hearing on that count.

¶ 75            For the reasons stated, we remand for further proceedings consistent with the directions in this order.

¶ 76            Remanded with directions.